```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
NEW YORK STATEWIDE SENIOR ACTION    :
COUNCIL, THE COALITION OF           :
VOLUNTARY MENTAL HEALTH AGENCIES,   :
INC., UNITED SENIOR ACTION OF       :
INDIANA, NATIONAL ALLIANCE FOR      :    05 Civ. 9549 (LAP)
THE MENTALLY ILL: MAINE, ACTION     :
ALLIANCE OF SENIOR CITIZENS OF      :    OPINION AND ORDER
GREATER PHILADELPHIA,               :
MASSACHUSETTS SENIOR ACTION         :
COUNCIL, CONGRESS OF CALIFORNIA     :
SENIORS, and MEDICARE RIGHTS        :
CENTER,                             :
                    Plaintiffs      :
                                    :
           v.                       :
                                    :
MICHAEL O. LEAVITT, SECRETARY OF    :
THE U.S. DEPARTMENT OF HEALTH AND   :
HUMAN SERVICES,                     :
                                    :
                    Defendant.      :
------------------------------------x
```

LORETTA A. PRESKA, U.S.D.J.:

BACKGROUND

Congress enacted, and on December 8, 2003 President Bush signed into law, the Medicare Prescription Drug, Improvement, and Modernization Act ("MMA"), 42 U.S.C. § 1395w-101, et seq. The Secretary of Health and Human Services ("Secretary"), through the Centers for Medicare and Medicaid Services ("CMS") is charged with implementing and administering the MMA, legislation that CMS has characterized as "'the most significant change to the Medicare Program since its inception in 1965.'" (Declaration of Leslie V. Norwalk, Deputy Administrator of CMS, dated December 19, 2005, at ¶ 5 (quoting 70 Fed. Reg. 4,194, 4,197 (Jan. 28,

2005))). The MMA addresses "the absence of prescription drug coverage[,] . . . a major gap in Medicare coverage for most Medicare beneficiaries," approximately 42 million in number. (Declaration of Judith Feder, Dean of the Georgetown Public Policy Institute, executed on December 5, 2005 ("Feder Decl."), at ¶¶ 5, 9). Coverage under the MMA goes into effect on January 1, 2006. See 42 U.S.C. § 1395w-101(a)(2).

A significant subset of Medicare beneficiaries, approximately 6.4 million, "are entitled to full Medicaid benefits as well as Medicare benefits." (Feder Decl. at ¶ 20). These individuals are known as "full-benefit dual eligibles," see 42 U.S.C. § 1395w-101(b)(3)(D), or, more simply, "dual eligibles." (Feder Decl. at ¶ 20). In the event that a dual eligible individual fails to enroll in an MMA prescription drug plan, the Secretary must make the enrollment, with the enrollee retaining the right to decline coverage. See 42 U.S.C. § 1395w-101(b)(1)(C). Pursuant to that statutory mandate, the Secretary has promulgated automatic enrollment rules requiring CMS to enroll dual eligibles in plans "offering basic prescription drug coverage in the area where the individual resides." 42 C.F.R. § 423.34(d). If there is more than one suitable plan in the applicable area, enrollment is made on a random basis. See id. Under the rules promulgated by the Secretary, automatic enrollment must be effective on January 1, 2006 for all persons

2

who qualify as dual eligibles as of December 31, 2005. 42 C.F.R. § 423.34(f)(1).

Although Plaintiffs challenge the Secretary's actions with respect to enrollment of dual eligibles under the Medicare Act, a thumbnail sketch of the Medicaid system is necessary to get the full picture. "Unlike Medicare, which is funded and managed by the federal government, Medicaid is financed jointly by the states and the federal government, and the states administer the program within broad federal guidelines." (Feder Decl. at ¶ 13). There is, therefore, no uniform Medicaid program applicable to all of the states, but rather 51 separate programs run by the 50 states and the District of Columbia, with substantial variation from state to state. (Id. at ¶¶ 13, 15). The federal government provides funding, sets certain baseline requirements, and sweetens the pot with additional funds for states that provide optional services beyond the minimum requirements. (Id. at ¶¶ 13-17). Although the federal government does not require prescription drug coverage under Medicaid, all states offer the optional benefit of prescription drug coverage under this incentive-based framework. (Id. at ¶ 18). Certain drugs currently covered by Medicaid are not covered under the MMA. (Id. at ¶ 31(g)). For those drugs, Medicaid coverage will still be available to dual eligibles after the MMA goes into effect on January 1, 2006. (Id.).

3

Citing, inter alia, concerns about dissemination of information and data management in the automatic enrollment process (see generally Corrected Declaration of Timothy M. Westmoreland, Research Professor at Georgetown University Public Policy Institute, executed on December 7, 2005), Plaintiffs seek an injunction compelling the Secretary to retain Medicaid prescription drug coverage for dual eligibles as a contingency plan to prevent gaps in coverage. The Secretary contends that the existing enrollment process and contingency plan are satisfactory and deserve deference. The threshold question, however, is whether this Court has jurisdiction to entertain Plaintiffs' request for relief. For the reasons stated herein, involving clear and straightforward application of statutory language and binding legal precedent, this Court is without jurisdiction to grant the requested relief, and the action must be dismissed.

## DISCUSSION

I. District Court Jurisdiction under the Medicare Act

The jurisdictional analysis must begin with 42 U.S.C. § 405(h) of the Social Security Act, made applicable to the Medicare Act through 42 U.S.C. § 1395ii. The second and third sentences of § 405(h) of the Social Security Act state:

> No findings of fact or decision of the
> Commissioner of Social Security shall be

> reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h). Section 1395ii makes § 405(h), along with certain other provisions, applicable with equal force to the Medicare Act, substituting the Secretary of Health and Human Services for the Commissioner of Social Security. See 42 U.S.C. § 1395ii; Shalala v. Ill. Council on Long Term Care, 529 U.S. 1, 8-9 (2000); Heckler v. Ringer, 466 U.S. 602, 614-15 (1984).

Notwithstanding § 405(h)'s apparent bar of actions under 28 U.S.C. § 1331 against the Secretary, Plaintiffs allege jurisdiction under § 1331, as well as the Administrative Procedure Act, 5 U.S.C. § 702, 706, which is discussed infra. Given the "facially dubious jurisdictional claim," this Court requested sua sponte that the parties address the jurisdictional issue. Binder v. Barnhart, 399 F.3d 128, 130 (2d Cir. 2005) (citing United States v. Leon, 203 F.3d 162, 164 n.2 (2d Cir. 2000)).

In the context of Social Security, the Supreme Court in Weinberger v. Salfi held that § 405(h) grants the federal district courts jurisdiction to review claims as outlined in § 405(g), which allows any party to a hearing to bring an action

in district court within 60 days after the agency's decision. 422 U.S. 749, 762-63 (1975). The <u>Salfi</u> Court noted that

> [e]xhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.

<u>Id.</u> at 765. According to <u>Salfi</u>, however, § 405(h) leaves the courts without jurisdiction to entertain actions under § 1331 altogether. <u>Salfi</u> interpreted § 405(h) as "more than a codified requirement of administrative exhaustion," given that the statute "states that <u>no</u> action shall be brought under § 1331, not merely that only those actions shall be brought in which administrative remedies have been exhausted." <u>Id.</u> at 757 (emphasis in original).

Applying the <u>Salfi</u> decision in the context of Medicare, the Supreme Court in <u>Ringer</u>, 466 U.S. at 621-22, reaffirmed the principle that § 405(h) bars § 1331 jurisdiction in claims arising under the Medicare Act. That the plaintiff in <u>Ringer</u> had not presented an actual claim, but was instead "seeking to establish a right to future payments" on a potential future claim, was a particular affront to the statutory framework. <u>Id.</u> at 621. Allowing an anticipatory challenge to the Secretary's policy choice in the absence of a specific claim "would be inviting [claimants] to bypass the exhaustion requirements of the

6

Medicare Act by simply bringing declaratory judgment actions in federal court," id., and would "undercut [Congressional] choice by allowing federal judges to issue . . . advisory opinions," id. at 622.

The relatively clear waters of jurisdictional analysis under the Medicare Act were rendered somewhat murky in the wake of the Supreme Court's decision in Bowen v. Michigan Academy of Family Physicians, which carved out an exception to § 405(h)'s § 1331 jurisdiction bar where plaintiff physicians challenged Medicare regulations authorizing different reimbursement amounts for similar medical services. 476 U.S. 667, 668, 678-80 (1986). Among other things, the Michigan Academy Court noted that the plaintiff physicians, who lacked standing to make claims under the administrative provisions available to Medicare recipients, would be without any remedy whatsoever if § 1331 jurisdiction were foreclosed to them. Id. at 680. Applying a "'strong presumption that Congress did not mean to prohibit all judicial review' of executive action," id. at 681 (quoting Dunlop v. Bachowski, 421 U.S. 560, 567 (1975)), the Court found an exception to the jurisdictional limitation under the circumstances presented in Michigan Academy, id.

Resolving a circuit split on the scope of Michigan Academy, the Supreme Court in Illinois Council clarified that the Michigan Academy exception was limited to those narrow circumstances where

denial of jurisdiction "would not lead to a channeling of review through the agency, but would mean no review at all." 529 U.S. at 17. In two post-Illinois Council decisions which Plaintiffs cite in support of jurisdiction, the Court of Appeals affirmed precisely this reading of Michigan Academy and Illinois Council. Furlong v. Shalala held that non-assigned physicians, who had no procedural mechanism under the Medicare Act to obtain judicial review of reimbursement methodology decisions, were permitted to bring actions under § 1331. 238 F.3d 227, 230, 232-33 (2d Cir. 2001). The court in Furlong noted that, with respect to the plaintiffs, it was faced with "the kind of scheme which not only postpones judicial review, but forecloses it." Id. at 234. Binder involved an attorney who, as a non-party to his client's disability benefits claim, had no mechanism under the Social Security Act to seek recovery of attorney's fees. 399 F.3d at 129-31. "[W]here there is no appropriate administrative forum, it makes no sense to bar federal suit," the court in Binder held, noting, consistent with Illinois Council, the presumption that "Congress did not intend to foreclose all avenues of judicial review." Id. at 131.

In light of the Supreme Court decisions culminating in Illinois Council, the key question presented to this Court is not whether judicial review is merely postponed, but whether the Medicare Act denies Plaintiffs judicial review entirely, so as to

8

justify the limited exception to § 405(h) carved out in <u>Michigan Academy</u>. A review of the statutory framework answers that question in the negative.

II. <u>Access to Judicial Review Under the MMA</u>

Although Plaintiffs are nominally associations, they purport to represent individual dual eligibles in danger of falling between alleged cracks in the MMA enrollment process. Dual eligibles, by definition, are individuals entitled to receive benefits under the Medicare Act and, as such, have access to the remedies, including judicial review, available under the Act. The MMA contains provisions for grievances, coverage reconsiderations, and appeals. <u>See</u> 42 U.S.C. § 1395w-104(f)-(h). Under § 1395w-104(h), Prescription Drug Program ("PDP") sponsors must "meet the requirements of paragraphs (4) and (5) of section 1395w-22(g)," which provide for review of coverage denials and appeals. The appeals mechanism under § 1395w-22(g)(5) affords Medicare enrollees and providers "judicial review of the Secretary's final decision as provided in section 405(g)," subject to limitations based on amounts in controversy. Judicial review is therefore available under the MMA to dual eligibles who present concrete claims and exhaust their administrative remedies. Whether the claim asserted is for past benefits denied after a hearing or future benefits expected to be denied as a

9

result of an agency policy or decision, as here, makes no difference in the jurisdictional anaylsis. See Illinois Council, 529 U.S. at 10, 13-14 (holding that Salfi and Ringer "foreclose distinctions based upon the potential future versus the actual present nature of the claim . . . or the "declaratory versus injunctive nature of the relief sought.") (internal quotation marks omitted).

The dual eligibles whose interests Plaintiffs seek to represent are, in effect, in no different a position from individuals entitled to receive non-MMA Medicare benefits. Any Medicare recipient runs the risk that he or she will seek medical services and, due to a glitch in a database, be informed, erroneously, that he or she is not in the system. The Medicare Act does not contemplate that such an individual can file a complaint in federal court before even attempting to present a claim to the agency. It would be a wholesale subversion of the Medicare Act's legislative intent to avoid overburdening the courts, see Michigan Academy, 476 U.S. at 674-75, if beneficiaries were able to bring federal cases where a simple phone call, e-mail, or letter might straighten out the problem. This rationale applies even more so where, as here, the alleged glitches are anticipated but have not yet occurred. This Court recognizes that the allegation is one of systemic rather than individual proportions, but that weighs in favor of doing what

the statute requires: channeling "virtually all legal attacks through the agency, . . . assur[ing] the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts . . . ." Illinois Council, 529 U.S. at 13.

The action brought by Plaintiffs is unlike the actions brought in Salfi, Ringer, Michigan Academy, and Illinois Council in one significant respect. Unlike the plaintiffs in those cases, Plaintiffs here are not individual claimants seeking decisions on specific claims. Rather, the Plaintiff associations claim to represent the interests of as yet unidentified dual eligibles who may or may not experience lapses in coverage beginning on January 1, 2006, depending upon the efficacy of the enrollment and contingency plans adopted by the Secretary. Plaintiffs' case admittedly presents something of a conundrum. They allege that a certain number of dual eligibles will inevitably slip between the cracks in the automatic enrollment process established by the Secretary. For obvious reasons, however, Plaintiffs cannot identify at this premature juncture the particular individuals who will fall between the cracks on the January 1, 2006 effective date. But specific individuals who have presented concrete claims to the Secretary are exactly what the Medicare Act requires, Ringer, 466 U.S. at 625, before administrative remedies can be exhausted, or waived, and a claim

becomes ripe for judicial review, id. at 617 (citing Mathews v. Eldridge, 424 U.S. 319, 328).

The absence of a single individual claimant mentioned anywhere in the papers submitted by Plaintiffs is in itself fatal to the claim of jurisdiction. Salfi addressed this issue and held that the district court "had no jurisdiction over the claims asserted on behalf of unnamed class members." 422 U.S. at 753. Finding the complaint as to the class members "deficient in that it contains no allegations that they have even filed an application with the Secretary," the Salfi Court held that "the District Court was without jurisdiction over so much of the complaint as concerns the class, and it should have entered an appropriate order of dismissal." Id. at 764. Moreover, the language of the MMA's appeals provision, which states, "only the Part D eligible individual shall be entitled to bring such an appeal," 42 U.S.C. § 1395w-104(h)(1), clearly indicates that Congress did not intend to allow requests for relief by associations on behalf of unidentified individuals, as is attempted here.

### III. Plaintiffs' Claim of Jurisdiction Under the APA

To the extent that Plaintiffs assert jurisdiction under the Administrative Procedure Act, such jurisdiction is foreclosed by the Supreme Court's interpretation of § 405(h), as made clear in

12

Ringer. The statute bars all § 1331 claims "arising under" the Medicare Act, regardless of whether the claim also can be said to arise under other legislation. Ringer, 466 U.S. at 622. Noting that constitutional claims in Salfi were barred by § 405(h), the Court commented that "it would be anomalous indeed for this Court to breathe life into [an] already discredited statutory argument in order to give greater solicitude to an APA claim than . . . the constitutional claim in Salfi." Id. at 622 (emphasis in original).

Assuming arguendo that this Court had jurisdiction under the APA, the claims asserted would not be ripe for review. Plaintiffs seek to "compel agency action unlawfully withheld or unreasonably delayed" under 5 U.S.C. § 706(1). (Plaintiff's Compl. at ¶ 50-54). Because the action they seek to compel is due to be effective on January 1, 2006, Plaintiffs do not in fact seek to compel final agency action that has been delayed or withheld, but rather seek to attack the discretionary choices made by the Secretary leading up to the deadline for action. Plaintiffs have pointed to no legal precedent that would support judicial intervention under § 706(1) prior to an agency's deadline to take action. Plaintiffs' claim of arbitrary and capricious action by the Secretary under 5 U.S.C. § 706(2), (Plaintiff's Compl. at 55-57), is also not ripe for review in the absence of final agency action and a fully-developed record.

13

Even if this Court were to throw judicial restraint to the wind, it is entirely unclear what type of order might be fashioned, other than a reiteration of what the statute says. Plaintiffs, by way of contrast, would have this Court issue an order requiring the Secretary to retain Medicaid prescription drug benefits for dual eligibles after January 1, 2006, a dictate that is nowhere to be found in the MMA and that, arguably, is contrary to its plain language. See 42 U.S.C. § 1396u-5(d)(1) (Medicaid provision regarding "[c]oordination of prescription drug benefits" enacted along with the MMA and providing as follows: "Medicare as primary payor: In the case of a Part D eligible individual . . . medical assistance is not available under this subchapter for such drugs (or for any cost-sharing respecting such drugs)"). Given that Medicaid is comprised of 51 separate systems run by the individual states and the District of Columbia, (see Feder Decl. at ¶¶ 13, 15), and that prescription drug benefits are an optional benefit offered by, but not required of, the states, (see Feder Decl. at ¶ 18), such an order might violate principles not only of separation of powers, but also of federalism (perhaps even presenting the issue of an unfunded mandate). This Court has neither the authority nor the inclination to fashion such an order.

## CONCLUSION

The <u>Ringer</u> Court summed up the issues presented in this case, and the rationale for deferring to Congressional judgment as embodied in the relevant statutory provisions, as follows:

> In the best of all worlds, immediate judicial access for all of these parties might be desireable, but Congress, in § 405(g) and § 405(h), struck a different balance, refusing declaratory relief and requiring that administrative remedies be exhausted before judicial review of the Secretary's decisions takes place. Congress must have felt that cases of individual hardship resulting from delays in the administrative process had to be balanced against the potential for overly casual or premature judicial intervention in an administrative system that processes literally millions of claims every year. If the balance is to be struck anew, the decision must come from Congress and not this Court.

466 U.S. at 627. The holding and rationale of <u>Ringer</u> are determinative here.

Accordingly, Plaintiffs' motion for a preliminary injunction (Docket no. 3) is denied, and the action is dismissed for lack of jurisdiction. The Clerk of the Court shall mark this action closed and all pending motions moot.

SO ORDERED

December 30, 2005

*Loretta A. Preska*

Loretta A. Preska, U.S.D.J.

15